In the Matter of RICHARD WRIGHT, Appellant-Respondent, *v.* PAUL J. REGAN, as Chairman of the New York State Board of Parole, et al., Respondents-Appellants.

Fourth Department, December 5, 1974.

*Herman Schwartz* and *Edward I. Koren* for appellant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Eugene Panfil, Ruth Kessler Toch, Bruce R. Schmidt* and *Michael G. Wolfgang* of counsel), for respondents-appellants.

MARSH, P. J.   These are cross appeals from a judgment in an article 78 proceeding which granted petitioner's request for a parole revocation hearing, granted petitioner's request for relief for all parolees similarly situated and denied petitioner's motion to dismiss all outstanding parole violation charges pending against him.

The petitioner is a detainee at Erie County Penitentiary awaiting trial on an indictment handed down in December of 1972 by the Wyoming County Grand Jury inquiring into the Attica uprising.   Also lodged against petitioner is a parole delinquency detainer warrant issued by the New York State Board of Parole in June of 1972.   Respondents are the Chairman of the New York State Board of Parole, the Commissioner of the New York State Department of Correctional Services and the New York State Board of Parole.   The petition asserts

that Richard Wright is confined to the Erie County Jail as a State prisoner. On April 17, 1968 petitioner was sentenced to a term of imprisonment not to exceed six years. His maximum expiration date was to occur on April 19, 1974. On May 19, 1972 petitioner was conditionally released from Attica Correctional Facility. On June 21, 1972, he was convicted of assault in the third degree and pled guilty to a charge of disorderly conduct and was sentenced to serve one year in the Erie County Penitentiary. In December, 1972 petitioner was indicted by the Wyoming County Grand Jury for offenses committed during the Attica insurrection in September, 1971. On July 21, 1972, petitioner's one-year sentence to the Erie County Penitentiary expired and he applied for bail upon the Attica indictment. A bail hearing was held and bail was fixed at $500 cash or $2,000 bond. Petitioner was notified that even though he raised the bail, he could not be released because of the parole detainer warrant filed by the New York State Parole authorities. Petitioner requested a parole revocation hearing at the Erie County Penitentiary but was informed by the New York State Parole authorities that the parole revocation hearing could not be conducted until petitioner was transferred to the custody of the New York State Department of Correctional Services. Petitioner has never seen the detainer warrant and has never been informed as to what parole violations he is alleged to have committed. It would appear from the Attorney-General's brief that the parole detainer is based upon petitioner's conviction of assault third and disorderly conduct. However, nowhere in the record or in any briefs is the exact nature of the parole violation charges stated. The questions presented for review are:

(1) Whether petitioner is entitled to a parole revocation hearing although custody had not attached to the New York State Department of Correction at the time of the filing of the detainer and still has not attached.

(2) If petitioner is entitled to a prompt parole revocation hearing and the same has been denied, did the circumstances of that denial, including its length, so prejudice petitioner's rights that he is now entitled to a dismissal of those charges.

(3) Is this a proper case for permitting class action relief to all parolees similarly situated.

A determination of the question whether petitioner is entitled to a hearing while awaiting trial on the Wyoming County indictment should start with a consideration of the statutory provision for declaring a conditional release delinquency and

revoking parole. Subdivision 7 of section 212 of the Correction Law provides: "Whenever there is reasonable cause to believe that a person who is on parole or conditional release has violated the conditions thereof, the board of parole as soon as practicable shall declare such person to be delinquent. Thereafter, the board shall at the first available opportunity permit the alleged violator to appear personally, but not through counsel or others, before a panel of three members and explain the alleged violation. Such appearance shall be either at an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to rules and regulations of the board. The board shall within a reasonable time make a determination on any such declaration of delinquency either by dismissing the declaration or revoking the parole or conditional release."

Subdivision 10 of section 212 of the Correction Law provides for the promulgation of rules and regulations necessary to carry out the duties of the Division of Parole assigned to it by the section.

The rules of the Board of Parole relating to proceedings on violations of parole provide for the issuance of a warrant for the retaking and temporary detention of a parole violator by a member of the Board of Parole or an officer of the Division of Parole designated by the board. The parole violator is thus detained in a temporary detention facility whenever he may be found and a warrant of return issued. It is further optionally provided that a warrant of return may be held in abeyance until the new charges have been disposed of by the court where the defendant is being held on another charge (7 NYCRR 1.18).

The rules governing revocation hearings provide that a hearing to determine revocation or conditional parole shall be scheduled as soon as practicable after the return of an alleged violator to a State operated correctional facility (7 NYCRR 1.19 [e]). Thus, it is evident that the rules do not mandate a prompt hearing under the circumstances of petitioner Wright. The rules make it optional whether a warrant of return is held in abeyance pending the disposition of new charges and that it is only at such time as the parole violator is returned to a State correctional institution that a parole violation hearing is to be scheduled.

Concerning the right to a revocation hearing the Supreme Court in *Morrissey* v. *Brewer* (408 U. S. 471, 478–479) stated: "There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation

by the parole authority. * * * The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as the [state] suggest[s] occurs in some cases, would not appear to be unreasonable."

Thus, petitioner is entitled to a reasonably prompt hearing under *Morrissey* which he has been denied (see, also, *People ex rel. Menechino* v. *Warden,* 27 N Y 2d 376).

Petitioner is entitled to a prompt revocation hearing notwithstanding the fact that the parole violation charges are based upon the conviction of a crime and he is entitled to counsel at such a hearing notwithstanding the regulations of the Parole Board (7 NYCRR 1.19 [c]; *People ex rel. Donohoe* v. *Montanye,* 35 N Y 2d 221, decided Oct. 8, 1974). In *Donohoe* the Court of Appeals invalidated the regulation of the Board of Parole which denied the assistance of counsel at a final revocation hearing where the basis for the parole violation charge is the conviction of a crime. In *Donohoe* just as in the instant case, the conviction was for third degree assault. The same rationale outlined in *Donohoe* for requiring the assistance of counsel at the final revocation hearing promptly held applies here. "Revocation is not automatic and rests in the discretion of the Parole Board (Correction Law, § 212, subd. 7; see, also, § 210). The offense committed or the circumstances, including the facts which may have induced a plea to a lesser offense, surrounding the crime may be such that counsel by offering testimony or effective reasoning might persuade the board not to revoke parole." (*People ex rel. Donohoe* v. *Montanye,* at p. 226.)

The issue of constitutional dimension presented is whether the Department of Correction may lodge a detainer warrant so as to continue the incarceration of petitioner without bail until the felony charge of the Wyoming County Grand Jury has been disposed of without benefit of a hearing on the parole violation charges which are the basis for the detainer warrant. In answer to the Attorney-General's argument that petitioner could always have obtained his hearing by the mere expedient of posting the required bail, the Court of Appeals in *People ex rel. Calloway* v. *Skinner* (33 N Y 2d 23) has unequivocally stated that there is no right to bail for a parolee detained in advance of a revocation hearing and there is not even a statutory provision for it. Even were this not the case, it would be

offensive to due process of law to condition petitioner's right to a hearing on his ability to raise bail on the criminal charge; especially so were he to be indigent as is alleged of the instant petitioner (*People ex rel. McNair* v. *West*, 77 Misc 2d 150).

"Likewise, it is no remedy to advise a prisoner to post bail in order to obtain a hearing. Since that hearing might return him to prison, he would be performing an act both expensive and possibly futile. Since most defendants in Kings County, including relator, are indigent, this requirement is unreasonable. Moreover, the presence of parole detainer warrants may prejudice the ability of a defendant to obtain a bail he can afford, since Judges also dislike performing futile acts." (*People ex rel. McNair* v. *West, supra,* p. 154.) (See, also, *Matter of Way* v. *Division of Parole*, 71 Misc 2d 229; *People ex rel. Cordero* v. *Thomas,* 69 Misc 2d 28.)

It appears clear that there is authority in the Board of Parole to obtain by a warrant of return the production of a parole violator at an institution in the State. In fact, the regulations give the Parole Board the option of obtaining custody of the parole violator or holding the warrant of return in abeyance until the new criminal charges have been disposed of. Given this authority and the duty to provide a prompt hearing, a procedure denies due process which denies petitioner a hearing for two and one-half years.

The argument that the parolee was not entitled to a revocation hearing until the criminal charges were disposed was decisively rejected in *Matter of McLucas* v. *Oswald* (40 A D 2d 311, app. dsmd. 32 N Y 2d 761). In *McLucas* the parolee was detained in the State of Connecticut and was incarcerated on a murder charge following a conviction which the parolee was appealing. Bail had been set by the Connecticut court but the parolee could not be released on bail due to the lodging of the detainer warrant by the New York Parole Department. The New York Parole Department argued that it was not required to grant either a preliminary or a final revocation hearing until the parolee was discharged from prosecution or from imprisonment in Connecticut. The Third Department held that this was an unreasonable position and that the parolee was constitutionally entitled to a prompt hearing, which could be had in the State of Connecticut pursuant to the Interstate Compact, and that such hearing should be granted within 60 days from the entry of the order. The court found that the denial of a speedy hearing did not prejudice defendant's right to a meaningful hearing to the extent that the parole violation charges should

be dismissed. It construed section 218 of the Correction Law in conjunction with the *Morrissey* holding, however to require a prompt hearing subsequent to the filing of the detainer warrant and within a reasonable time after the parolee had been taken into custody.

It may properly be concluded that petitioner has been denied, in violation of his constitutional rights, a revocation hearing since he has already been incarcerated two and one-half years following the filing of the detainer warrant. Having been deprived of his constitutional right to a prompt revocation hearing, the question remains whether petitioner's right to such a hearing can be vindicated by ordering at this stage a hearing so long delayed. The Court of Appeals in *Donohoe* establishes the necessity for such a hearing even though the parole charges are based upon a new conviction. It is asserted in the Attorney-General's brief that the maximum expiration date of petitioner's original sentence was to occur April 19, 1974, thus, if petitioner had not violated his parole as alleged by respondent, he would have been entitled to discharge from parole supervision and not subject to further return (§ 212, subd. 6). It thus appears that had petitioner been granted a prompt hearing, his parole may not have been revoked and thus his sentence would have expired April 19, 1974. Petitioner's incarceration from June 21, 1973 until the present has been due to the existence of the detainer warrant. At least in legal contemplation, he was not entitled to be released while the detainer warrant was outstanding. It would be unreasonable to conclude that petitioner can be made whole without prejudice to his constitutional rights by the ordering of a hearing at this late date. The detainer warrant should be ordered vacated and the declaration of delinquency dismissed with prejudice (*People ex rel. McNair* v. *West*, 77· Misc 2d 150).

Petitioner moved in an amendment to his petition and the court ordered in its judgment that: "The relief granted to petitioner herein is made available to the class of all other parolees similarly situated."

No New York authority is cited for permitting class action relief in a criminal case under CPLR 1005. The circumstances vary so widely from case to case that this in itself should deter granting any sweeping class action relief. The Court of Appeals has recently stated in the *Donohoe* (35 N Y 2d 221, 225, *supra*) case that the law should develop on a case by case basis with respect to parolee rights concerning revocation: "Recognizing that it would be difficult to anticipate all the questions that would

arise, the court referred to a case-by-case approach in applying the right to counsel ''.

The effect of the instant judgment should have the same impact with respect to other parolees as an order granting specific relief in a particular case, and here we have no identifiable class to which class relief would apply.

The judgment should be reversed, petitioner's application for class action relief denied and the parole violation charges should be dismissed.

WITMER, CARDAMONE, SIMONS and MAHONEY, JJ., concur.

Judgment unanimously reversed, petitioner's application for class action relief denied and parole violation charges dismissed.